**NORRIS v. DAGLEY et al.**

No. 7316—Opinion Filed July 10, 1917.

(166 Pac. 718.)

(Syllabus by the Court.)

**1. Contracts—Validity—Mental Capacity.**

A person wholly without understanding has no power to make a contract of any kind.

**2. Mortgages—Actions—Evidence.**

Where the evidence showed that a woman who executed certain notes and a mortgage given to secure same had, prior to the date thereof, been committed to the asylum for the insane, and was afterwards paroled into the custody of her husband, and had later, after the execution of said instruments, been recommitted to the asylum, that at all times between these dates she was suffering from a mental disease of slow progress and her condition grew steadily worse, that she suffered from delusions, and, while in the custody of her husband, was guarded by a man or kept locked in a room, that she would frequently have fits, and every two or three days become violent and wanted to fight, and that she was irrational and unable to carry on an intelligent conversation upon any subject, and this condition was shown to exist up to within a very few days of the execution of said notes and mortgage, the court was warranted in finding that she was wholly without understanding, within the meaning of section 888, Rev. Laws 1910.

Error from District Court, Oklahoma County; Frank Mathews, Assigned Judge.

Action by Lyman N. Norris against A. Zillah Dagley, represented by R. H. Christy, guardian, and another. There was a judgment for defendants, and plaintiff brings error. Affirmed.

Sam K. Sullivan, Roy F. Ford, and Hal S. Burke, for plaintiff in error.

Ames, Chambers, Lowe & Richardson, for defendants in error.

HARDY, J. On March 7, 1912, E. L. Dagley and A. Zillah Dagley, his wife, executed a mortgage upon certain real estate therein described to secure the payment of certain promissory notes of even date therewith. Upon default in the payment of said notes this action was commenced to foreclose said mortgage. E. L. Dagley having died, his administrator was made party defendant, and A. Zillah Dagley, having been adjudged insane, was represented by her legal guardian. Answer was filed in her behalf, alleging, among other things, that she had been adjudged insane, and that at the time of the execution of said notes and mortgage she was absolutely incompetent on account of her insanity and unable to know and appreciate the consequences of her action, and that by reason thereof said notes and mortgage were void. It was further alleged that she was the sole owner of said property, and it was prayed that said notes and mortgage as to her be canceled. There was trial to the court which resulted in findings and judgment in favor of defendant A. Zillah Dagley and a decree canceling said mortgage. The court found that she was an insane

person, and at the time said notes and mortgage were executed was wholly without understanding.

From this judgment plaintiff prosecutes error, and it is contended in this court that the judgment of the trial court is wrong, because the evidence was not sufficient to warrant a finding that said defendant was wholly without understanding, and therefore said mortgage was not void, but was, at the most, only voidable.

Section 888, Rev. Laws 1910, is as follows:

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

Section 889 is as follows:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the article on extinction of contracts."

And by section 890 it is enacted that, after his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract nor delegate any power nor waive any right until his restoration to capacity is judicially determined. It appears to be the clear intent of these statutes to declare that persons entirely without understanding are without power to make contracts of any kind, and that persons of unsound mind, but not entirely without understanding, whose capacity has been judicially determined, are likewise without power to make any contract; and the converse of this appears to be true, that a person of unsound mind who is not wholly without understanding and whose incapacity has not been judicially determined may enter into contracts which are not void but may be rescinded without prejudice to the rights of third persons. Maas et al. v. Dunmyer, 21 Okla. 434, 96 Pac. 591; Duroderigo v. Culwell, 52 Okla. 6, 152 Pac. 605. Evidence was introduced to show that said defendant had been by the commissioners of insanity for Oklahoma county, committed to the asylum at Norman prior to the date of said note and mortgage. This did not constitute a judicial determination that said defendant was without capacity to enter into contracts. Said commissioners of insanity did not act in a judicial capacity, nor was a finding made by them a judicial determination that said defendant was insane. In re Maas, 10 Okla. 302, 61 Pac. 1057.

The evidence shows that the said defendant had not been well for a number of years, and that on August 3, 1911, she had been committed to the asylum at Norman. On August 6th thereafter her husband, who was a doctor, upon the representation that he was able to take care of her, secured a parole, and she was released into his custody. She was recommitted to the asylum on March 13, 1912. A number of experts, including Dr. Griffin, superintendent of the asylum, testified as to her mental condition, and stated that in their judgment, during all of the time from August 3, 1911, until March 12, 1912, she was insane and incapable of understanding and appreciating the consequences of her act; that the mental disease from which she was suffering was one of slow progress, and not of sudden approach, and that during these different dates her condition grew steadily worse; that in their opinion on the date the notes and mortgage were executed she was without sufficient mental understanding to comprehend and appreciate the effect of her acts in executing said instruments. It further appears that during all these times she suffered from delusions that she was being persecuted, and that she was possessed of great wealth, and that the whole of nature and the universe was centered in her, and that but for her there would not be anything, that she was connected with royalty and was related to kings and queens, and that she would imagine that she was being taken back to the ocean. There was evidence to show this was her condition continuously from the time she was first committed until after she was returned to the asylum. While at home her condition was such that she was either kept in a room or guarded by a man, a woman not being strong enough to take care of and protect her. The middle door of her room was locked with a padlock, and the other doors and windows were screened with heavy galvanized wire, and this condition is shown to have existed during the winter months and up to within a very few days before the execution of the notes and mortgage. The attorney who claims to have represented her and her husband in procuring the loan testified that the day after the money was paid over to them she appeared in his office and conversed with him, and at that time was irrational and unable to carry on an intelligent conversation. She would frequently have fits, according to one physician, and every two or three days would become violent and want to fight. She could recognize persons and would talk for a few words in an apparently rational manner, but was incapable of carrying on an intelligent conversation upon any subject. There was ample evidence to sustain the facts above stated; and upon these facts the court based his

conclusion that she was wholly without understanding within the meaning of the statute. It is contended that these facts are not sufficient to support the findings of the court.

A statute similar to this has been construed by the Supreme Court of California in the case of Jack v. Estee, 139 Cal. 507, reported in 73 Pac. 247. An appeal was taken by defendant from a judgment foreclosing a mortgage of his intestate, Mrs. Divine. The court found that the intestate:

"At the time of the execution by her of the promissory note and mortgage in question, and for a considerable period next before that time, did not have sufficient mental capacity to understand the purpose and effect of the promissory note and mortgage executed by her, * * * but because of her age and her physical infirmities and the impairment of her mental faculties prior to and at the date of the execution of said note and mortgage, she did not possess sufficient mental capacity to enable her to comprehend the business in which she was engaged while executing the said note and mortgage."

It was there contended, as here, that the facts as found by the trial court did not bring defendant's intestate within the provisions of the statute which declared that:

"A person entirely without understanding has no power to make a contract of any kind."

In discussing this statute, it was said that the term "understanding" was used to denote, not the act of understanding, but the capacity or faculty of doing so, and that the expression "without understanding" was to be understood as referring to persons without such capacity, and was not to be understood in its literal and extreme sense, because in hardly any case could even the most insane person be said to be without some degree of understanding, but rather it was to be understood as restricted to the subject-matter to which the section relates, which is that of contracts executed and executory, and hence as applying to all persons who were entirely without the capacity of understanding or comprehending such transactions, and it was held that the facts were sufficient to bring the case within the provision of the statute.

The evidence here, which supports the findings of the court, shows a much stronger state of facts than that presented in the California court. The defendant here is shown to have been without sufficient intelligence to comprehend the nature and consequences of the act, and is shown during all times to have suffered from delusions which impaired, and in effect destroyed, her mental capacity; and it is made to appear that she was incapable of carrying on a rational conversation concerning any subject, both preceding and after the date upon which said notes and mortgage were executed.

The findings of the court, in our judgment, are amply sustained by the evidence; and said defendant, being wholly without understanding within the spirit and meaning of the statute, was without power to execute any contract, and said notes and mortgage are void and cannot be enforced by reason of her want of capacity to execute the same. By this we do not mean to say that plaintiff would not be subrogated to the rights of a prior mortgage to the payment of which a part of the proceeds of the transaction in question were applied, nor that said defendant would not be liable for any necessaries furnished her, if any, nor do we express any opinion as to the liability of defendant's guardian for a return of such sums of money as may have been received by him from the proceeds of the transaction.

The judgment is affirmed.

All the Justices concur, except KANE, J., absent, and not participating.