## KIRK et ux. v. McCLENDON.

No. 11585—Opinion Filed June 12, 1923.

Rehearing Denied Dec. 4, 1923.

1. **Insane Persons—Recovery — Restoration to Rights—Statutes.**

According to section 9102, Comp. Stat. 1921: "Whenever any person shall have been discharged from the hospital for the insane on account of his recovery from insanity, such discharge shall restore such person to all his political, civil, and other rights the same as if he had never been insane."

## 2. Same.

The proceeding for the restoration of an insane person to capacity, under section 1452, Comp. Stat. 1921, is not applicable to the case of one confined in an insane asylum without having been put under guardianship.

## 3. Same.

Where a person has been discharged from a hospital for the insane on account of his recovery, under a law existing at the time of said discharge, it is immaterial whether said law was repealed by the Legislature by an act approved at a later date.

## 4. Same—Order of Commitment to Asylum by Board of Insanity—Effect.

An order of a board of insanity, adjudging one to be insane, has no bearing upon his legal mental status; the effect of such an order is to admit one to the state hospital for treatment, as the members of such board do not act as judicial officers, but as a special board, clothed with a special power only, and the fact that the county judge is a member of said board does not affect the matter, as he acts as any other member of the board, and not as a country judge or as a county court.

## 5. Appearance—Filing Demurrer as Waiver of Defects in Process.

Defendants in an action, by filing a demurrer to the petition, waive any defect in the issuance of service of summons.

## 6. Appeal and Error—Harmless Error—Evidence.

Where a party to an action introduced his sworn petition, showing that he was confined in a hospital for the insane and was discharged therefrom as cured, the introduction of a sworn copy of the records, showing the same state of facts, over the objection of the party, does not, in any way, prejudice the rights of the party.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by J. W. McClendon against Robert A. Kirk and Malinda Kirk. Judgment for plaintiff, and defendants bring error. Affirmed.

I. L. Cook and Maxey & Cook, for plaintiffs in error.

J. G. Ralls, for defendant in error.

Opinion by THOMPSON, C. Defendant in error commenced this action in the district court of Atoka county, Okla., by filing his petition on the 13th day of November, 1917, praying for judgment on the promissory note executed on the 20th day of June, 1914, by plaintiffs in error to the defendant in error and for a foreclosure of a real estate mortgage, given by plaintiffs in error as security for the payment of said note. Summons was issued and returned, showing personal service upon Malinda Kirk and service upon R. A. Kirk "by leaving a copy of the within summons duly certified with Malinda Kirk for R. A. Kirk, a person over the age of fifteen years old, on November 15, 1917." On November 30, 1917, plaintiffs in error filed their demurrer, which was overruled by the trial court on July 1, 1918, and plaintiffs in error given 20 days thereafter to file answer. Plaintiffs in error failed to file any answer in the cause, and on the 13th day of June, 1919, the cause came on for trial on its regular setting. The defendant in error appeared and announced ready; plaintiffs in error did not appear or plead, and were adjudged in default, and judgment was rendered in favor of defendant in error for the amount of his note and for the foreclosure of the mortgage and sale of property ordered and for a personal judgment against plaintiffs in error for a deficiency judgment in case the property did not sell for the amount of the judgment. Execution and order of sale were issued; sale made and sheriff made a return of order on the 2nd day of February, 1920. On February 17, 1920, plaintiffs in error filed their objection to confirmation of sale and rendition of deficiency judgment for the reasons, in substance, that the journal entry was not submitted to the plaintiffs in error, or their attorney, and that the attorneys for the parties had orally agreed that no deficiency judgment be rendered against the plaintiffs in error; that the note sued on was given for purchase price of the land described in the petition and the mortgage, which was sold to them by the defendant in error, and that the title had failed, and that defendant in error had no title to same; that the note and mortgage were obtained through fraud and misrepresentations and that they had been induced to sign the note and mortgage by false and fraudulent representations made to them by defendant in error, that said land had only brought the sum of $100 at said sale, which was an inadequate consideration; that the lands had been purchased by the defendant in error at the sale; that suit had been filed against them for the recovery of said land by James and Henry Roberts, and that said suit was then pending in the court, and prayed that the return of sale should not be confirmed, and that no deficiency judgment be rendered against them for the remainder of the indebtedness over and above the amount said lands brought at the sale, and asked that the judgment be vacated, set aside and held for naught, and the court, on the 23rd day of February, 1920, overruled the objections

and exceptions of plaintiffs in error and entered his order confirming said sale. On the 20th day of February, 1920, plaintiffs in error filed their petition to vacate and set aside said judgment, and on March 25, 1920, filed their first amended petition to vacate the judgment, upon the grounds, in substance, that defendant in error obtained a judgment against them upon his promissory note in the sum of $1,234.82, principal, interest, and attorney fees, and for foreclosure of mortgage upon certain real estate described; that defendant in error sold the lands described in the mortgage to plaintiffs in error and represented to them that he had a good and valid title to said land; would furnish abstract of title to the same before he would require payment therefor from them, and that they had executed said note and mortgage with that understanding; that they had demanded abstract of title and on investigation learned that defendant in error had no title to the land, and that there was suit pending against him to divest him of his pretended title, and that defendant in error had made false and fraudulent representations to them in regard to the same: that at the time the judgment was rendered, plaintiff in error R. A. Kirk was incompetent to appear for himself, for the reason that he had been adjudged insane, and had been committed to the Eastern Hospital for the Insane, at Vinita, Okla., on the 17th day of October, 1916, by the county board, and that he had thereby been deprived of his civil rights, and was incompetent to contract, sue, or be sued; that at the time of filing this suit plaintiff in error was still incompetent, and no legal service was ever had on him, nor could he be legally served with summons, and that he had no legal guardian appointed after he was adjudged insane; that at the time of the rendition of the judgment said R. A. Kirk was incompetent, and never had his civil rights restored, and no guardian ad litem was appointed for said R. A. Kirk; that R. A. Kirk was the only real party at interest; that said land had sold at sheriff's sale for $100, and a deficiency judgment rendered against plaintiffs in error for $1,134.82; that I. L. Cook, attorney for plaintiff in error R. A. Kirk, had a conversation with J. G. Ralls, attorney for defendant in error, in which he had told J. G. Ralls that no defense would be made to the foreclosure of the mortgage, but that if a deficiency judgment should be sought, he would take steps to defend said suit for plaintiff in error R. A. Kirk, and that J. G. Ralls stated that a deficiency judgment would not be worth anything anyway, and made further statements in said conversation that led said Cook to

believe that a deficiency judgment would not be sought or asked; that, relying upon said statements, said Cook took no steps to defend same, and that Ralls, notwithstanding said understanding, took judgment for the deficiency, and the lands sold to defendant in error for the sum of $100, which amount was inadequate; that said sale was based upon a void judgment, obtained through fraud, misrepresentations and mistake; that plaintiffs in error had a good and meritorious defense, and set out an answer in the original petition to vacate, as an exhibit, which was made part of the amended petition.

On the 27th of March, 1920, the cause came on for hearing upon the petition to vacate, and, upon the presentation of oral and documentary evidence, the court rendered judgment, denying plaintiffs in error's petition to vacate.

The substance of the evidence, as it affects this appeal, is the testimony of R. A. Kirk, who testified that he was an inmate of the asylum at Vinita for three months; that he received no certificate of discharge; that he did not put his deed of record, because he got no abstract, which was to be furnished before he paid anything. When asked if he knew the value of the land, he testified that he did not know that he did, but he knew what he would value it at, and while it is true his attorney offered to show that the land was worth $50 an acre, there is no objection to the offer and no ruling by the court, nor exception saved in the record, and the attorney seemed to have abandoned it. He further testified that his attorney told him that they would not ask for any judgment against them and that was the agreement. On cross-examination he testified that he had been transacting business ever since he returned from the asylum; that he was attending to the business of the Cook Lumber Company; checked lumber; sold it and received pay for it; paid the tickets, and had quit working for them in August, 1919. The proceeding before the insanity board of the county was introduced, showing that R. A. Kirk was found to be insane by said board, and committed to the hospital for the insane, at Vinita, on the 16th day of October, 1916, and he was received as an inmate of said institution on the 17th day of October, 1916, and there was also introduced by plaintiffs in error the sworn petition of Robert Kirk, of date March 22, 1920, asking for an order declaring him sane and restoring him to civil rights, in which said petition he alleged that he was committed to and received in said hospital for the insane, at Vinita, Okla., on the 17th day of October, 1916. That,

thereafter, petitioner recovered from his insanity, and was restored to health, and was discharged from the said hospital for insane on the 17th day of January, 1917. The defendant in error then introduced the warrant of commitment to the hospital, and, over the objection of plaintiffs in error, introduced a copy of the order of discharge duly certified and sworn to by F. M. Adams, superintendent of the Eastern Hospital for the Insane, which is as follows:

"State of Oklahoma, Craig County, ss.
"East Oklahoma Hospital for the Insane,
"Vinita, Oklahoma.

"I, Felix M. Adams, do hereby certify that I am Medical Supt. of the East Oklahoma Hospital located at Vinita, Oklahoma, and that there is attached hereto a true and correct copy of the record kept by said Institution showing the receipt into said Institution of Robert Kirk and the date thereof, and his discharge, and the date thereof, and the cause for his discharge.

"Dated this 3 day of March, 1920.
"F. M. Adams, Supt.
"Superintendent's Office East Oklahoma Hospital for the Insane.
"Vinita, Oklahoma.

"On this 17th day of Jan. 1917, Mr. Robt. Kirk of Atoka, Okla., patient No. 850 was discharged from this hospital as recovered.
"F. M. Adams, Superintendent.

"Subscribed and sworn to before me this 26th day of February, 1920.
"Ethyl Griffin, Notary Public.
"(Seal.)
"My Com. Exp. Feb. 28, 1921."

That, after hearing was had on plaintiffs in error's petition to set aside judgment on the 19th day of April, 1920, the court found the issues against the plaintiffs in error and denied the petition to vacate and set aside the judgment; motion for new trial filed and overruled; exceptions taken; and the cause comes to this court regularly on appeal from said judgment.

The plaintiffs in error set up six different assignments of error as follows:

"First Assignment of error.

"The court erred in the original case in rendering default judgment against Robert A. Kirk without first appointing for him a guardian ad litem, and in rendering judgment upon defective service of summons.

"First Propostion Under 1st Assignment of Error.

"A person adjudged insane by a court of competent jurisdiction is deprived of his civil rights, and cannot legally act for himself, contract, delegate any power, waive any right or appear for himself in any judicial proceeding until his restoration to sanity and capacity is judicially determined,

and default judgment rendered against such person without the appointment of a guardian, or a guardian ad litem, is void.

"Second Proposition Under First Assignment of Error.

"Judgment based on defective service of summons, and without appearance is void.

"Second Assignment of Error.

"The court erred in overruling objections of plaintiffs in error to confirmation of sale, and entering a deficiency judgment against plaintiffs in error.

"First Proposition Under Second Assignment of Error.

"Sale of land under execution and order of sale, based on a void judgment, is void, and should not be confirmed.

"Third Assignment of Error.

"(Fourth Ground of Motion for New Trial).

"The court erred in excluding evidence offered by plaintiffs in error to show the real value of the land sold under order of sale.

"First Proposition Under Third Assignment of Error.

"Where fraud and the inadequacy of consideration is an issue, evidence of the real value of the land sold is material and relevant.

"Fourth Assignment of Error.

"(1st, 2nd, 3rd, 4th, and 5th grounds of Motion for New Trial.)

"It was an abuse of discretion on the part of the trial court, to refuse to vacate and set aside the judgment upon the showing made by plaintiffs in error on hearing of their petition to vacate judgment.

"First Proposition Under Fourth Assignment of Error.

"The sound legal discretion of a court is an impartial discretion, guided and controlled in its exercise by fixed legal principles, and is a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice, and the exercise of any other than sound legal discretion is an abuse of discretion, and is contrary to law.

"Fifth Assignment of Error..

"The court erred in admitting copies of books of record, purporting to show the discharge of Robt. A. Kirk from the hospital for the insane.

"First Proposition Under Fifth Assignment of Error.

"Books of record are the best evidence of entries therein, and copies of such entries is hearsay and inadmissible in evidence.

"Sixth Assignment of Error.

"(8th Ground of Motion for New Trial.)

"The court erred in refusing to vacate the judgment upon the ground set out in the 4th paragraph of the petition of plaintiffs in error to vacate judgment.

"First Proposition Under Sixth Assignment of Error.

. "Words or acts of a party to an action, which mislead the adverse party to his injury, constitute legal fraud, and default judgment obtained by reason thereof, is rendered in fraud, and should be vacated."

The attorneys for plaintiffs in error argue the first and second propositions under the first assignment of error, and the same may be disposed of under one head. It follows, if Robert A. Kirk were restored to his political, civil and other rights, the same as if he had never been insane, by his discharge from the insane asylum, the defective service of summons upon him could not be taken advantage of by him after he had entered his appearance by filing his demurrer to the petition of defendant in error, as was done in this case. Attorneys for plaintiffs in error contend that the finding of the insanity board that R. A. Kirk was insane, and committing him to the hospital for the insane, at Vinita, Okla., was a judicial finding, and that there would have to be a judicial finding restoring him to sanity before he would be relieved of this disability, and cite section 890, Rev. Laws 1910, which is the same section as 4985 of Comp. Stat. 1921. Said statute is as follows:

"Judicial determination of incapacity. After his incapacity has been judicially determined a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But, if actually restored to capacity, he may make a will, though his restoration is not thus determined."

And they also refer to the Session Laws of 1917, Senate Bill 85, secs. 28, 30, which, they claim, repealed section 7039 of Rev. Laws 1910, which is the same section as section 9102 of Comp. Stats. 1921, and is as follows:

"Patients entitled to former rights on recovery. Whenever any person shall have been discharged from the hospital for the insane on account of his recovery from insanity, such discharge shall restore such person to all his political, civil and other rights the same as if he had never been insane."

The attorneys for both parties to this action seem to have overlooked the fact that the session law, above referred to, was not approved until the 26th day of March, 1917,

and the discharge of R. A. Kirk from the hospital occurred on the 17th day of January, 1917, previous.

It is not material to this case whether said session law repealed the Laws of 1910 on this subject or not, as this case must be determined upon the law in force on the 17th day of January, 1917, as the effect of the discharge must be measured by the law, in force at the time of said discharge. The attorneys for plaintiffs in error refer, also, to section 6541, Rev. Laws 1910, which is the same as section 1452, Comp. Stats. 1921, which is as follows:

"Proceedings to determine restoration to capacity. Any person who has been declared insane, or the guardian or any relative of such person, within the third degree, or any friend may apply by petition to the county court of the county in which he was declared insane, to have the fact of his restoration to capacity judicially determined. The petition shall be verified, and shall state that such person is then sane. Upon receiving the petition, the judge must appoint a day for the hearing, and cause notice of the trial to be given to the guardian of the petitioner, if there be a guardian, and to his or her husband or wife, if there be one, and to his or her father or mother, if living in the county. On the trial, the guardian or relative of the petitioner, and in the discretion of the judge, any other person, may contest the right of the petitioner to the relief demanded. Witnesses may be required to appear and testify, as in other cases, and may be called and examined by the judge on his own motion. If it be found that the petitioner be of sound mind and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person, if such person be not a minor, shall cease."

Thus, it will be seen that there were three sets of laws governing an insane person, one under the head of "Public Institutions," one under the head of "Contracts," and the other under the head of "Guardian and Ward," and under the general rule of construction it is the duty of courts to reconcile the statutes and give all of them full force and effect, if it can be done.

We cannot agree with counsel for plaintiffs in error that the order of the board of insanity of Atoka county was a judicial finding. The effect of the order was only to admit R. A. Kirk to the hospital for treatment. The Supreme Court of the territory of Oklahoma, in the case of Maas v. Phillips, Sheriff, 10 Okla. 302, 61 Pac. 1057, for writ of habeas corpus, in a decision by Judge Burwell, decided:

"Order of County Board of Insanity—Effect of. An order of a board of insanity ad-

judging one to be insane, has no bearing upon his legal mental status; the effect of such an order is to admit one to the territorial asylum for treatment, and it is not entitled to the faith and credit of a judgment of a court, as the members of such board do not act as judicial officers, but as a special board clothed with special power only."

And in the body of the opinion we find this language:

"The boards of insanity are special boards created by law for a special purpose. It was only intended to clothe them with the power to determine who should be confined in the territorial asylum for treatment, and they have not the power to fix one's legal status; that is to declare one to be in law sane or insane, and the fact that probate judges are made members of these respective boards changes not the rule. When a probate judge acts in this capacity, he acts as any other member of the board, and not as a probate judge or as a probate court."

In the case of Norris v. Dagly, 64 Okla. 171, 166 Pac. 718, in an opinion by Justice Hardy, we find the following language:

"Evidence was introduced to show that said defendant had been by the commissioners of insanity for Oklahoma county, committed to the asylum at Norman prior to the date of said note and mortgage. This did not constitute a judicial determination that said defendant was without capacity to enter into contracts. Said commissioners of insanity did not act in a judicial capacity, nor was a finding made by them a judicial determination that said defendant was insane." See, also, Aldrich v. Barton, 153 Cal. 488, 95 Pac. 900.

Then, from the above authorities, we are forced to conclude that there is a distinction between the judicial finding by the county court that the party is insane for the purpose of appointing a guardian for him to take charge of his property, and the finding by a board of insanity, and in view of the fact that the plaintiff in error R. A. Kirk himself testified, in his own behalf at the trial of this cause, that he was confined in the insane asylum at Vinita for three months, and in his sworn application to be restored to sanity he was declared insane on the 16th day of October, 1916, by the board of insanity of Atoka county, and that he thereafter recovered from his insanity, and was restored to health, and was discharged from the hospital for the insane on the 17th day of January, 1917, that by operation of the statute, section 9102, when he was discharged from the hospital for the insane on account of his recovery from insanity, he was restored to all his political, civil, and other rights the same as if he had never been insane, and the trial court was justified in so finding on sworn petition of R. A. Kirk, introduced in his own

behalf in this cause, independently of whether the certified record of the Eastern Hospital for the Insane, over the signature of F. M. Adams, superintendent, and sworn to by him, was admissible or not.

It is, therefore, our opinion that R. A. Kirk was capable in law of defending this action without the aid of a guardian ad. litem, and that when he entered his appearance by filing a demurrer in this cause he waived all rights to object to the defective service of summons.

As to the second assignment of error, we are of the opinion that the same is not properly presented to this court for a decision, as no objection or exception or appeal was taken at the time of the overruling of objections to the confirmation of sale.

On the third assignment of error, it appears in the testimony of R. A. Kirk that he was asked if he knew the value of the land and he answered:

"Well, I don't know as I do. I know what I would value it at. Q. Were you offered anything for it? A. Yes, sir."

And upon objection by attorney for defendant in error, objection was by the court sustained. This testimony was not competent, as it was not the way to show value. Then attorney for plaintiffs in error used this language:

"We offer to show that the land was worth $50 an acre and that there is in the tract of land 29 acres and that it sold for $100 at the sheriff's sale, the whole 29 acres."

There is no objection in the record, no ruling of the court, and no exception, nor does the attorney undertake to state by whom he expects to make this proof, certainly not by the witness who was then on the stand, as he had not qualified to give this testimony, and the record stops at this point, and there is nothing further in the record as to value. And the offer seems to have been abandoned by counsel for plaintiffs in error. We, therefore, conclude that the third assignment of error is without merit.

In the fourth assignment of error the attorneys for plaintiffs in error complain that the court abused its discretion when it refused to vacate and set aside the judgment upon the showing made by plaintiffs in error. The petition to vacate was filed on the 20th day of February, 1920, eight months after the judgment complained of was entered and after the term had expired at which the same was rendered. To this contention of plaintiffs in error we cannot agree.

The evidence in the case was ample to support the finding of the lower court, and

the vacating of a judgment after the term has expired in which it was rendered is within the sound discretion of the court, and we cannot say that the court abused its discretion.

On the fifth assignment of error plaintiffs in error complain of the admission of the sworn copy from the records of the Eastern Hospital for the Insane, signed and sworn to by F. M. Adams, superintendent. Whether this record was admissible or not is unimportant, and it is not necessary for us to pass upon the same, for the reason that plaintiff in error R. A. Kirk, in his sworn petition, introduced by himself, says that he was discharged from the hospital for the insane on account of his recovery from insanity prior to the date that this action was commenced, and we are of the opinion that the plaintiff in error was not prejudiced by the introduction of this record.

Under the sixth assignment of error the plaintiffs in error complain that they were misled to their detriment by an oral statement of J. G. Ralls, attorney for defendant in error, made to their attorney, L. L. Cook, in which it was claimed that they understood that no deficiency judgment would be asked for or rendered in this cause. The testimony of the two attorneys was presented to the court, and their testimony was extremely contradictory, one testifying that such a statement was made in a general way and the other denying most positively that such a statement was made. If any statement was made, it was never reduced to a written stipulation, as it should have been, and filed in the cause. It would be a very dangerous precedent in a case of this character, unless it was undisputed that there was an oral agreement, for this court to hold that this oral understanding should be binding on the trial court, where there is such a sharp disagreement as to the fact. The trial court had all the parties before him, and saw the witnesses and their demeanor on the stand, heard their testimony and knew the parties, and made his findings against this contention of plaintiffs in error, and we are of the opinion that the finding of the lower court should not be disturbed.

It follows, therefore, that the decision of the lower court is, in all things, affirmed.

By the Court: It is so ordered.