## STATE ex rel. FREELING, Atty. Gen., v. BROWN et al.

No. 11835—Opinion Filed Sept. 18, 1923.

**1. Exemptions — Liberal Construction of Statutes.**

The exemption laws of this state are to be liberally construed in favor of the exemption.

**2. Homestead—Exemption of Proceeds of Sale.**

The exemption of the homestead of the family, provided in article 12 of the Constitution, extends to the proceeds of a voluntary sale of such homestead which are in good faith intended, at the time of such sale, to be invested in another homestead, and such proceeds are exempt from seizure by process of garnishment for debts not within the exceptions provided in article 12 of the Constitution.

**3. Same — Homestead Status—Intention to Occupy.**

Where the head of a family in this state is the owner of one or more tracts of land, not within any city, town, or village, consisting, in the aggregate, of not to exceed 160 acres, the fact of ownership alone is not sufficient to constitute it a homestead, but where preparation is made to occupy the same as a homestead, or where an intention is evinced to so occupy it, within a reasonable time, it becomes impressed with the homestead character and is exempt, as such, and the proceeds derived from the sale of it, for the purpose of reinvesting in a homestead, are likewise exempt.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by the State, on the relation of S. P. Freeling, Attorney General, against J. R. Brown and another (John Eckhardt and others, garnishees). From order dissolving garnishment, plaintiff brings error. Affirmed.

T. W. Jones, Jr., and Eugene Forbes, for plaintiff in error.

A. J. Welch, for defendants in error.

Opinion by JONES, C. This action was commenced in the district court of Oklahoma county by the state of Oklahoma ex rel. S. P. Freeling, Attorney General of the state of Oklahoma, as plaintiff, against J. R. Brown, defendant, on the 24th day of May, 1920, to recover upon a promissory note executed by the defendant J. R. Brown on the 3rd day of December, 1918, at Weatherford, Oklahoma, in the sum of $2,882.12, made payable to the Farmers State Bank, Weatherford, Oklahoma, and which said note was then held by the State Banking Commissioner as part of the assets of the Farmers State Bank, which had heretofore become insolvent and taken over by the State Bank Commissioner. The petition prayed for judgment in the sum of $3,302.42, with interest from May 18. 1920, at ten per cent. per annum until paid and judgment in the sum of $288, attorney's fees. The petition was duly verified. On the same day an affidavit in garnishment and bond as required by the statutes was filed asking for garnishment summons upon John Eckhardt and Remund & Remund. Garnishment summons was duly issued and served upon the defendant J. R. Brown and the garnishees. The garnishee defendant John Eckhardt answered showing an indebtedness to the defendant Brown in approximately the sum of $5,000. The garnishee defendants Remund & Remund answered not indebted.

Thereafter, on the 10th day of June, 1920, the defendant J. R. Brown filed his motion to discharge the garnishment, and which, in substance, claims the funds in the hands of John Eckhardt to be the proceeds of the sale of a 160-acre tract of land near Weatherford, Okla., and which proceeds of sale the defendant claimed he intended to reinvest in a homestead for himself and family, and claimed that the land sold was his homestead, and for said reasons claimed the proceeds of said sale as exempt and not subject to garnishment.

On the 12th day of July, 1920, the court rendered a personal judgment in the sum of $3,303.42, with interest from May 18, 1920, at ten per cent. per annum, and for $288, attorney's fees against the defendant J. R. Brown.

And on the 13th day of July, 1920, the court heard the evidence upon the motion to discharge the garnishment, and sustained the motion and dissolved the garnishment. To this ruling of the court, the state excepted, filed its motion for a new trial, on July 15, 1920, which was heard on July 17, 1920, and overruled. The state saved its exceptions, gave notice of appeal in open court, and the case is now before this court for consideration. It should be added that Rena Brown, wife of the defendant J. R. Brown, at the request of A. J. Welch, attorney for said J. R. Brown, was added as one of the movants without objection on the part of the state.

Seven assignments of error are complained of, but they all go to the one controlling issue, wherein the court sustained the motion of defendants to discharge the garnishment, and thereby holding that the money garnisheed was exempt, being the proceeds derived from the sale of 160 acres of land, claimed by defendants to be their homestead, and which they intended to reinvest in another home. And the real question to be determined is whether or not the 160 acre tract sold was, in fact, a homestead, or impressed with the character of a homestead.

Defendants in error raise two questions in their brief. First, that this appeal should be dismissed, for the reason that the garnishment summons runs in the name of "State of Oklahoma," instead of "The State of Oklahoma," as required by law, and cites the cases of Phoenix Bridge Co. v. Street, 9 Okla. 422, 60 Pac. 221; Powell v. Bank, 56 Okla. 44, 155 Pac. 500; Bank v. Lowenstein, 52 Okla. 259, 155 Pac. 1127.

But the fact that all parties concerned appeared and pleaded to the merits of the case, we think, constitutes a waiver of the defects complained of. And, second, defendants in error insist that plaintiff in error has failed to conform to rule 26 of this court in preparing brief, but there seems to have been a substantial compliance therewith, and as there has never been a strict and rigid enforcement of the rule, we will not attempt to so apply it at this time.

The facts as to the real question involved in this case as disclosed by the record are as follows: That the defendants in error, J. R. Brown and wife, homesteaded on a tract of land in Oklahoma Territory at the opening of the Cheyenne country, and later sold it and reinvested the proceeds thereof in the tract in controversy in Custer county, Okla., on December 20, 1910; that on December 11, 1900, he purchased a residence in Weatherford, Okla., and lived there with his family most of the time until 1911, the year following the purchase of the farm, the proceeds of which are now in controversy, at which time he, together with his family, consisting of his wife and one son, moved to the farm and made a crop and remained there the greater part of the year, and then moved back to the place in Weatherford for the purpose, as he states, of placing his son in school, and the family continued to live there until August, 1919, at which time that property was sold, and a portion of their household effects, farming implements, and live stock were removed to the farm and left in charge of the tenant, Mr. Lamar, who was occupying the farm, and had so occupied same from year to year for a number of years, and at that time had re-rented for the year 1920. Mr. Brown and family moved to Chelsea, Okla., but did not establish any residence or home there.

The evidence further discloses that Mr. Brown, sometime prior to the sale of the Weatherford home, had lost his health, and had spent considerable time in hospitals, and had undergone a major operation, and had incurred a great deal of expense, which he was unable to meet, and gives this as a reason for selling his home in Weatherford. And after the sale of same, he returned to the hospital in Kansas City, and Mrs. Brown also became ill and was forced to go to the Kansas City hospital, where they both underwent major operations. And at about that time, February, 1920, the attending physicians advised Mr. Brown that he was suffering from a disease of the bladder and the same had been caused, or at least greatly aggravated, by the character of the water he had been accustomed to drinking. That the water of Custer county, Okla., contained gyp in such quantities as to make it detrimental to his health, and advised him to remove from that part of the state. Whereupon Mr. Brown discussed the matter of selling the Custer county farm with his wife, who at first demurred, and expressed a desire to retain it as a home, but on being assured by her husband that they would reinvest the proceeds derived from the sale of same in another farm, she gave her consent to the sale. And in February, 1920, the property was sold and in May, 1920, this suit was instituted and a portion of the proceeds garnisheed. Soon after the sale of the land defendants were discharged from the hospital, and shortly thereafter came to Oklahoma City and rented a rooming house, and seemed to be making some effort toward buying a farm in Oklahoma county, and contend that they would have purchased one, if the

funds in controversy had not been garnisheed.

These facts are largely established by the testimony of Mr. and Mrs. Brown, defendants in error, as to their intentions and are only slightly corroborated by any other testimony; however, there is nothing unnatural, improper, or that in any way indicates fraud in the conduct and contentions made in this case by defendants in error.

At the time they disposed of their home in Weatherford, they owned no other real estate except the farm and after meeting their current expenses, which were exceedingly heavy at that time, it is evident that they had no means with which they could have re-established a home, and it was certainly a natural thing for them to think of the farm, the only property they possessed, which they might occupy as a home. The fact that about all they possessed was a home, and that they formed and expressed their intention to so occupy it, would be a most natural inclination and desire, and when they so testify, we see no reason for disbelieving them. But plaintiff in error contends that at no time did they execute such an intention if ever evinced. But what are the facts which would naturally control and govern them as to the time and manner of execution?

The land was rented at the time they disposed of the Weatherford home, and had been rented for the year 1920. These facts are undisputed and are perfectly natural and proper conditions, so whatever their intentions may have been, they could not move on the farm at that time, or at any time prior to the sale thereof. And while there are no restrictions or inhibitions against the sale of the homestead, and nothing that requires an explanation from a homesteader as to why he sells or conveys his homestead (Japp v. Sapulpa Natl. Bank, 90 Okla. 56, 215 Pac. 1059), the record discloses and gives a very satisfactory reason as cause for the selling of the homestead in this case. Defendant was advised by his physician that he should not return to the locality in which the farm was situated on account of his physical condition.

There is one fact disclosed by the evidence that plaintiff in error seems to rely on, and that is the testimony of the witnesses and the affidavits, which were executed at the time of the sale of the Weatherford home, to the effect that it was the homestead of the defendants in error, but we deem this immaterial, for they would have the right to select another homestead immediately on disposing of the one formerly occupied.

So, taking all the facts into consideration, we are not prepared to say, or hold, that the trial court was in error in finding that defendants had evinced an intention of establishing a homestead in the lands in controversy, which he necessarily did in arriving at the judgment rendered.

That brings us to the question, which is purely one of law, of whether or not such an intention is sufficient, under the constitutional provisions of this state, to establish and constitute a homestead such as is exempt from execution or forced sale.

Our constitutional provision, section 1, art. 12, is one of the broadest and most comprehensive provisions found in any of the states of the Union on this question, and same has been construed and applied by our court in that same broad and liberal spirit which prompted and governed the authors of the Constitution when enacting it.

Section 1, art. 12, of our Constitution, providing for the homestead, is as follows:

"The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner; Provided, that the same shall not exceed in value the sum of $5,000, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value; And provided further, that in case said homestead is used for both residence and business purposes, the homestead entered therein shall not exceed in value the sum of $5,000; Provided, that nothing in the laws of the United States, or any treaties with the Indian tribes in the state, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state; And provided further, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

The provision, so far as a rural homestead is concerned, makes no requirement as to occupancy, ownership is the only requirement, but this court in passing upon the matter has held (McCray v. Miller, 78 Okla. 16, 184 Pac. 781):

"Where the head of a family in this state is the owner of but one tract of land, not within any city, town, or village, consisting of not to exceed 160 acres, the fact of ownership alone does not constitute it a homestead. There can be no homestead right in

land where the owner does not and never has resided thereon, and has made no preparation or evinced any intention of so doing."

The rule established by this construction might be regarded as a departure from the literal expression of the Constitution, and was evidently so regarded by some of the members of the court, as two of the justices dissent, but the construction given is the law and we think a fair and reasonable construction. It does not require actual occupany. The latter part of the syllabus quoted states:

"There can be no homestead right in land, where the owner does not, and never has resided theron, and has made no preparation or evinced any intention of so doing."

The converse of this rule would clearly be that where preparation to occupy same had been made, or a bona fide intention evinced of so doing, within a reasonable time, such circumstances and conditions would be sufficient to impress the homestead character upon land otherwise subject to the homestead rights. A reasonable time in law depends largely on the circumstances and conditions surrounding each particular case. 4 Words and Phrases (2nd Series) p. 186, gives the following definition:

"Reasonable time means such time as a prudent man could exercise or employ in or about his own affairs."

And it is further defined to be:

"So much time as is necessary, under the circumstances, to do conveniently, what the contract or duty required should be done in a particular case."

And the intention to use and occupy a given tract of land as a homestead, and what is necessary to constitute such an intention, like the question of "reasonable time," is difficult to define in specific terms, and is dependent upon the circumstances and conditions surrounding each particular case. And under the facts as disclosed by the record in this case, we think that the defendants in error had a right to claim the Custer county farm as the homestead an : that they had evinced an intention to do so.

The only question left in this case, is the right of the defendants to claim as a homestead exemption the proceeds derived from the sale of the farm, and whether or not they intended to reinvest same in a homestead, and what would constitute a reasonable time for reinvestment. This raises an important question, and one which we think this court has formerly decided, wherein they hold that the proceeds of a homestead which the parties intended to reinvest in a homestead are exempt.

In Field v. Goat et al., 70 Oklahoma, 173 Pac. 364, it is said:

"1.  Exemptions — Construction of Exemptions—Statutes.

"The exemption laws of this state are to be liberally construed in favor of the exemption."

"2.  Homestead—Exemptions—Constitutional Provisions.

"The exemption of the homestead of the family, provided in article 12 of the Constitution, extends to the proceeds of a voluntary sale - of such homestead which are in good faith intended, at the time of such sale, to be invested in another homestead, and such proceeds are exempt from seizure by process of garnishment for debts not within the exceptions provided in article 12 of the Constitution."

The question of exemption, in fact, is the paramount benefit and the crux of the homestead law. The homestead right is, in fact, an exemption, and clearly there is no inhibition in our constitutional provisions and homestead laws prohibiting the sale or transfer of a homestead. There is no express provision, and should be no disposition to hold, that homesteads are immovable and that by reason of any conveyance they should lose the homestead character, and the homesteader should not lose his exemptions, which is the real benefit derived by reason of the homestead laws.

The question of a reasonable time in which to reinvest in a homestead is, of course, governed by the same rules of law that govern and define what constitutes a "reasonable time," which we have heretofore referred to, and we think it would be improper for the court to attempt to specifically determine what might constitute a reasonable time. In this case the evidence conclusively shows that the defendant was sick and spent the greater part of several months in the hospital, and was not in such physical and mental condition as would enable him, or justify him, in transacting business matters of so grave a nature as investing practically all the wealth which he had accumulated in a lifetime in a home. We do not think, as a matter of law, that a man would be required to transact such matters as the purchase of a homestead, so long as he continued in ill health and in such physical and mental condition as to incapacitate him for business or labor. The loss of health frequently produces an unsettled condition of mind and while in that condition we are frequently at a loss to know just what we should do, or what is best to do, and men in this condition frequently defer matters and wait in the hope that they will soon regain their health, and that then they will be bet-

ter able and more competent in deciding matters of so grave importance. And in view of the conditions surrounding this case, we are not prepared to say that a reasonable time had elapsed. In fact, we think it had not elapsed from the time of the sale of this property until the institution of this suit and the execution of the garnishment proceedings.

We, therefore, find that the evidence reasonably supports the judgment of the trial court, and the same should be affirmed.

By the Court: It is so ordered.