## GREENWOOD et al. v. WILKINSON.

No. 17138—Opinion Filed Feb. 15, 1927.

Rehearing Denied May 17, 1927.

(Syllabus.)

**1. Homestead—Abandonment — Burden of Proof—Sufficiency of Evidence.**

The burden of proving abandonment of a homestead is on the party charging same. This burden is met when it clearly appears from the record that the alleged homestead was vacated some 13 years prior to the trial and no intention of returning to the same was claimed, but on the contrary an intention to at some future time occupy another house on the same lots was expressed.

**2. Homestead—Insufficiency of Mere Expressed Intention to Occupy as a Home in Future.**

Where a person owns two or more pieces of property and resides in one for a number of years and rents the others, a mere expression of intention to at some future time occupy one of the others as a home is insufficient to impress said property with the homestead character in the absence of occupancy or an attempt in good faith to oc-

cupy same, which must be followed by the overt act of preparation without unreasonable delay.

**3. Indians—Removal of Restrictions— Homestead and Surplus Allotments of Mixed-Blood Cherokee Subject to Execution.**

The Act of May 27, 1908, removed all restrictions both from the homestead and surplus allotments of all allottees enrolled as intermarried whites, freedmen, and mixed-blood Indians having less than one-half Indian blood. Held, that both the surplus and homestead allotments of a one-sixteenth Cherokee Indian were subject to sale under execution on a judgment obtained on debt arising after restrictions were removed.

**4. Insane Persons—Judicial Finding of Incompetency in Guardianship Proceeding —Finding by Insanity Board Distinguished.**

There is a distinction between the judicial finding by the county court that a party is insane or incompetent, for the purpose of appointing a guardian for him to take charge of his property, and the finding by a board of insanity, such boards being special boards created by law for a special purpose. It was only intended to clothe them with the power to determine who should be confined in the state hospitals for treatment, and they have not the power to fix one's legal mental status; that is, to declare one to be in law sane or insane, and the fact that probate judges are made members of these respective boards changes not the rule. When a probate judge acts in this capacity, he acts as any other member of the board, and not as a probate judge or as a probate court.

**5. Same—Validity of Execution on Judgment Rendered Prior to Determination of Defendant's Insanity by County Lunacy Board.**

A judgment regularly obtained against a person when sane may be enforced by execution against their property notwithstanding a determination of insanity by a county lunacy board between the date of the judgment and the issuance of execution.

Error from District Court, Nowata County; C. H. Baskin, Judge.

Action by Sam F. Wilkinson against Harve Greenwood and another. Judgment for plaintiff, and from order overruling defendants' motion to set aside execution sale, they bring error. Affirmed.

W. H. Kornegay, for plaintiffs in error.

Geo. B. Schwabe and E. J. Raymond, for defendant in error.

HUNT, J. This is an appeal from an order of the district court of Nowata county confirming a sale of real estate under exe-

cution. The controversy arose out of a levy and sale on execution on a judgment obtained in said court in an action wherein the defendant in error, Sam F. Wilkinson, was the plaintiff and Harve Greenwood and Della Greenwood were defendants. Execution was issued and levied upon 50 acres of land allotted to the defendant Della Greenwood and upon two lots in Nowata, Okla., owned by her; the farm being the homestead portion of her Cherokee allotment and also her surplus allotment, as such Cherokee, she being a Cherokee citizen by blood. On the two town lots there were three dwelling houses, all claimed by Della Greenwood as being the homestead of the family. Over the protests of the plaintiffs in error, the property was sold and the defendant in error, the judgment creditor, became the purchaser. After the levy of the execution an injunction proceeding was instituted in the district court of Nowata county to enjoin the sale and remove the levy as a cloud on the title of the plaintiffs in error, but after its institution, the sheriff proceeded to sell the property.

To the motion for confirmation of sheriff's sale the plaintiffs in error filed an opposition to the confirmation and motion to set aside sale which set up the filing of a motion to quash the levy unacted on and also the injunction suit brought to restrain the sale, and also the fact that Della Greenwood was insane when the property was sold and had been so adjudged prior to issuance of the execution. It claimed both surplus and homestead allotment as being exempt. It further set up the claim that the property was sold without the intervention of a guardian and without the order of the county court. It especially claimed the town property as being a homestead, same being less than one acre in extent and not over $5,000 in value. There was an application for the appointment of a receiver made by the judgment creditor, and the receiver was appointed without notice.

At the conclusion of the evidence, the court refused to allow the homestead plea as to the town property, and also as to the Cherokee allotments, and confirmed the sale over the objections and exceptions of the plaintiffs in error, followed by motion for new trial, its overruling and exception and notice of appeal. The appeal was duly filed in this court.

For reversal the plaintiffs in error urge 21 different assignments of error, which are briefed under five different heads:

First: Was the town property subject to sale under the execution, or any portion thereof?

Second: Was the Cherokee homestead subject to sale on execution?

Third: Was the surplus allotment subject to sale on execution?

Fourth: It being admitted that the execution debtor was insane, was the judgment creditor entitled to levy upon the property and sell it on execution?

Fifth: Was the sale valid made under an appraisement made after the notices of sale had been completed? Was the second appraisement warranted?

The plaintiffs in error contend that the town property was the homestead of Della Greenwood. Evidence was introduced to show that the property was purchased by Mrs. Greenwood and occupied by herself and Mr. Greenwood as a homestead from 1899 to 1910. During the year 1910, she and her husband removed from said property into other property they owned, occupying the upper portion as an apartment and using the ground floor for the garage which Mr. Greenwood operated, and they resided in this apartment until Mrs. Greenwood was adjudged insane by the lunacy board of Nowata county and taken to the Hospital at Vinita in 1923. After removing to the apartment over the garage the residence which was located in the center of the two lots was moved to the north side of the lots and two additional residences were erected, and evidence was introduced to show that Mrs. Greenwood had expressed her intention to occupy the south residence as her homestead, as she had put more improvements on this one than the other two houses and had told various witnesses who were introduced that the south house was the nicest one and she expected to occupy that one as a home, but that there was a "boom" on in Nowata, and they were renting all three houses and living over the garage.

The plaintiffs in error cite the case of Japp v. Sapulpa State Bank, 90 Okla. 56, 215 Pac. 1059, quoting the second paragraph of the syllabus:

"It is the prevailing rule in this state that on the question of the abandonment of a homestead, the intention to abandon is the controlling fact to be determined. In such case the burden of proving such intention is upon the party charging the same." Citing Carter v. Picket. 39 Okla. 144, 134 Pac. 440; Nelson v. Fightmaster, 4 Okla. 38, 44 Pac. 213.

There is a line of authorities which hold that a person does not forfeit his right of

homestead when temporarily absent on account of business employment, educating children, etc.; but when they reside in another property owned by them which does not have as high rental value, and rent the property claimed as their homestead for a period of twelve years, and which was never occupied by them, and their reason for not occupying it was there was a "boom" on in the town and they could rent this property to a better advantage, an entirely different situation is presented.

The question here, then, is, Did the removal in 1910 of the plaintiffs in error from the only house on the lot at that time to the apartment over the garage constitute abandonment of that property as the homestead, it being conceded that plaintiffs in error never in fact returned to this house nor ever occupied it again or even expressed an intention so to do? Also, did the mere expression of an intention at some future time to occupy one of the new houses impress the same with the homestead character when such expressed intention was never carried out? It is true, as plaintiffs in error contend, and as was held in Japp v. Sapulpa State Bank, supra, that on the question of abandonment the intention is the controlling fact, and the burden of proving said intention is upon the party charging same. This burden, we think, is amply met in this case by the proof and by the admission of plaintiffs in error that they not only did not return to their original homestead, but on the contrary had no such intention, but did intend at some future time to occupy one of the new houses on the same lots. We do not believe, however, after a careful examination of all the testimony on this point, that the plaintiffs in error impressed upon the south house, mentioned in the testimony, the homestead character. It never was done by actual occupancy; therefore, if the homestead character was impressed upon it, it must have been done in accordance with the general rule laid down in Laurie v. Crouch, 41 Okla. 589, 139 Pac. 304, where in the second paragraph of the syllabus it is said:

"Where there is a fixed intention by the owner of a lot to presently occupy it as a home, accompanied with overt acts, which clearly manifest such intention, such as fitting up, building or repairing a house thereon for occupancy, followed by actually moving therein without unreasonable delay, it might have the effect, at least, in equity, of impressing the homestead character, so as to render the property exempt as against claims arising prior to actual occupancy by the family."

It has been held many times by our court that actual occupancy of the premises or an attempt in good faith to do so must follow the overt act of preparation without unreasonable delay. See, also, Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1044; State ex rel. v. Brown, 92 Okla. 137, 218 Pac. 816; Storm v. Garnet, 99 Okla 284, 227 Pac. 417, and Foster v. Vickery, 111 Okla. 231, 239 Pac. 141.

In the case of State v. Brown, supra, it was said:

"Reasonable time means so much time as is necessary under the circumstances to do conveniently what the contract or duty required should be done in a particular case."

In Foster v. Vickery, supra, it is stated as follows:

"But where an expressed intention, or even overt acts, are not followed by the logical and subsequent act of occupancy, even after a lapse of years, there is nothing to render applicable the doctrine of relation."

In the case of Bouse v. Stone, 65 Okla. 5, 162 Pac. 479, in the body of the opinion it is stated as follows:

"The Constitution, in starting out to define the exemption, uses as the subject of the defining sentence this clause, 'the homestead within any city, town or village, owned and occupied as a residence only.' We think occupancy as a residence the essential quality, as pertaining to an urban homestead. It may be used for business purposes also, but it must have about it the atmosphere of home use. The word 'residence' means a dwelling place, and the word 'occupy' to possess and use. Lots 25 and 26 were not possessed and used by plaintiffs as a dwelling place, nor as any part of their dwelling place. These two lots contained one dwelling house, with all the domestic accessories of an independent home; and the three adjoining lots, upon which plaintiffs actually lived, contained another dwelling house, with all of the accessories of a home, entirely distinct and independent of the other place, with a fence between. Other people, not of the family of plaintiffs, occupied lots 25 and 26 as their home; and plaintiffs could not even enter upon this property without the consent of the tenants, unless they committed a trespass. This condition was not temporary, but had continued for years, with the evident intention of its constituting a permanent arrangement. The creation of this situation was clearly an abandonment of the homestead character of these two lots, which existed prior to the building of the house on the other lots, the segregation of the property, and the removal of the home use of lots 25 and 26."

In the case of Watson v. Manning, 56 Okla. 295, 156 Pac. 184, cited with approv-

al in the case of Bouse v. Stone, above referred to, the first paragraph of the syllabus is as follows:

"To entitle one to claim a homestead in a town as exempt from levy and sale under execution, the property so claimed must be owned and occupied as a homestead, or have been impressed with the homestead character and no other homestead acquired."

The Watson v. Manning Case quotes from the case of McDonald v. Clark et al. (Tex.) 19 S. W. 1023, as follows:

"A house built on land on which the owner himself lives, and rented continuously to another, without ever being used in connection with his own house or for any household or domestic purposes, or as a place of abode for any one of his own family, is not a part of the homestead, though inclosed by the same fence; nor can the owner's mere intention to make it part of the homestead have that effect." Clausen v. Sanders, Sheriff, et al., 109 La. 996, 34 South. 53: John Ashton v. Ruth A. Ingle et al., 20 Kan. 670, 27 Am. Rep. 197.

Bouse v. Stone, supra, is directly in point with the case at bar. The new house was never occupied as a homestead nor impressed with the homestead character. Approximately 12 years' absence from the original home without returning thereto or even expressing an intention so to do clearly establishes an abandonment of it. We think the record here justifies the conclusion that the removal to the apartment over the garage which was owned by plaintiffs in error and continuous occupancy of same for about 12 years and use of same for both a home and business purposes constituted the acquiring of another homestead, the other property being held for investment purposes because of its income value as disclosed by the record.

With reference to the allotted lands of Della Greenwood, it appears from the record that the said Della Greenwood is of one-sixteenth Indian blood. The Act of May 27, 1908, removed the restrictions of all kinds on both the homestead and surplus portions of the allotments. Section 1 of the Act of May 27, 1908, 35 Stat. 312, reads as follows:

"Be it in enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, that from and after 60 days from the date of this act, the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes, shall as regards restrictions on alienation or incumbrance, be as follows: all lands including homestead of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than one-half Indian blood, including minors, shall be free from all restrictions."

In the case of Fuller v. Holderman, 114 Okla. 136, 244 Pac. 417, in construing the Act of Congress of May 27, 1908, the court said in the second paragraph of the syllabus thereof:

"Section 4 of the Act of Congress of May 27, 1908, removing restrictions on certain of the citizen allottees of the Five Civilized Tribes of Indians, left no inhibitions against subjecting the allotted 'homestead' of a deceased adopted white citizen of the Cherokee Nation to the payment of debts arising after restrictions were removed."

Viewed in the light of these authorities, it becomes apparent that there were no restrictions of any kind on the allotted lands of plaintiff in error at the time of the sale herein complained of, nor when the debt herein was contracted, and there was no inhibition against subjecting same to the payment of the debt upon which the judgment was obtained and for the payment of which the levy and sale here in question was had.

Plaintiffs in error cite and rely upon Choctaw Lumber Co. v. Coleman, 56 Okla. 377, 156 Pac. 222; In re French's Estate, 45 Okla. 819, 147 Pac. 319, and Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565; but a careful examination of these authorities discloses that they are not applicable here and in no way in conflict with the conclusion here reached.

We come now to the question of the insanity of the judgment debtor at the time of the levy and sale herein complained of. It is admitted in the record that plaintiff in error Della Greenwood was declared insane by the lunacy board of Nowata county in June, 1923, and the undisputed evidence shows that she was a person of sound mind up until a year before that time, when the first indications of a failing mind developed and she was temporarily committed to a private sanatorium. It is also admitted that no application was ever made to the county court to declare her incompetent and for appointment of a guardian either of her person or estate, and that no guardian was ever appointed, and that she was never declared incompetent by the probate court in the manner provided by law. The record also discloses that the judgment upon which execution was issued was rendered in October, 1921, at a time when there was no question as to the sanity of the plaintiff in error and almost two years prior to the time when she was declared insane by the lunacy board of Nowata county. Plaintiff in error relies on section 13, article 7, of

the Constitution of Oklahoma, which is as follows:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; **transact all business appertaining to the estates of deceased persons minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof.** * * *"

While this section provides that the county courts of this state shall "transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards." yet it imposes no duty on the county courts in connection with these estates until its jurisdiction is first invoked in the manner prescribed by law. The record herein shows that the jurisdiction of the county court of Nowata county sitting in probate was never invoked in the matter of the estate of Della Greenwood, and said county court has never acquired or exercised any jurisdiction over the person or estate of said Della Greenwood. It seems to be well settled that a judgment against an insane person may be enforced by levy of execution on his property. 14 R. C. L. section 34.

"According to the weight of authority judgment against an insane person may be enforced by levy of execution on his property." Citing Gressly v. Hamilton County, 136 Iowa, 722, 114 N. W. 191, 15 Ann. Cas. 354, and note; Allison v. Taylor. 6 Dana, 87, 32 Am. Dec. 68; Thacker v. Dinsmore, 5 Mass. 299, 4 Am. Dec. 61; Pollock v. Horn, 13 Wash. 626, 43 Pac. 885.

That the judgment for which the property was sold was regularly obtained at a time when the judgment debtor was unquestionably sane is amply shown by the record. A subsequent adjudication of insanity by the county lunacy board did not fix or determine

the legal mental status of Della Greenwood, but merely determined her right to be admitted to a state institution for treatment. This proposition was passed on in the early case of Maas v. Phillips, Sheriff, 10 Okla. 302, 61 Pac. 1057, which was followed in Norris v. Dagley, 64 Okla. 171, 166 Pac. 718. This rule as announced in these early cases was followed in the case of Kirk v. McClendon, 94 Okla. 33, 220 Pac. 949, wherein it was held:

"An order of a board of insanity, adjudging one to be insane, has no bearing upon his legal mental status; the effect of such an order is to admit one to the state hospital for treatment, as the members of such board do not act as judicial officers. but as a special board, clothed with a special power only, and the fact that the county judge is a member of said board does not affect the matter, as he acts as any other member of the board, and not as a county judge or as a county court."

This proposition seems well settled in this jurisdiction against the contention of plaintiffs in error, and we therefore conclude that the judgment creditor was entitled to levy upon and sell the property here in question, and are firmly of the opinion that the trial court committed no error in confirming said sale. Other assignments of error, not being argued in the brief and no authorities cited in support thereof, will be treated as waived and not considered.

Finding no error in the record, the judgment of the district court in confirming the sale of the property here in question will not be disturbed, but is in all respects affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON. PHELPS, LESTER, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 29 C. J. p. 961, §403; p. 965. §410; 13 R. C. L. p. 695; 3 R. C. L. Supp. p. 73, (2) 29 C. J. p. 801. §46; pp. 804, 805, §50; 13 R. C. L. p. 650. (3) 31 C. J. p. 514, §79; p. 545, §151. (4) 32 C. J. p. 680, §349; p. 682, §358. (5) 32 C. J. p. 792, §658; 14 R. C. L. p. 579.