## HARRIS v. INTERNATIONAL LAND CO. et al.

No. 9572—Opinion Filed Dec. 7, 1920.

Rehearing Denied Jan. 7, 1921.

Second Rehearing Denied April 17, 1923.

(Syllabus.)

**1. Deeds—Insane Persons—Mental Capacity to Contract.**

A person entirely without understanding has no power to make a contract of any kind, but is liable for the reasonable value of things furnished necessary to his support or the support of his family. The test of capacity to make a deed is, that the grantor shall have the ability to understand the nature and effect of the act in which such grantor is engaged, and the business which is being transacted, and when it is made to appear that the grantor was incapable of comprehending that the effect of a deed, when made, executed, and delivered, would be to divest such grantor of title to the land described in such deed, such a deed is void.

**2. Same—Appeal and Error—Review of Equity Case—Judgment—Evidence.**

In a case of purely equitable cognizance, it is the duty of this court to review the entire record, and, if it appears that the judgment of the trial court is clearly against the weight of the evidence, reverse the cause and render, or cause to be rendered, such judgment as should have been entered at the trial. Record examined, and held, that the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by Lucy Harris, alias Dilsey Harris, an incompetent person, by Jerry Scully, guardian, against the International Land Company and others to cancel certain conveyances. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser, J. Berry King, Philip Kates, and Villard Martin, for plaintiff in error.

H. B. Martin and R. A. Reynolds, for defendants in error.

BAILEY, J. This action was commenced in the superior court of Tulsa county, Oklahoma, by Lucy Harris, alias Dilsey Harris, an incompetent person, by her guardian, Jerry Scully, against the defendants in error, International Land Company, a corporation, George W. Adams, M. T. Stauffer, E. A. Ross, Henry N. Greis, H. P. Porter, B. T. Hainer, H. B. Martin, The Creo Oil Company, a corporation, The Security Oil Company, a corporation, and First National Bank of Tulsa, Okla. The case was later transferred to the district court of Tulsa county, where judgment was rendered for the defendants, from which judgment the plaintiff in error, plaintiff below, prosecutes this appeal.

The action was brought for the purpose of canceling certain conveyances, among which is a deed to 30 acres of land located in Tulsa county, which deed the plaintiff in error is alleged to have executed in favor of the International Land Company, a corporation, on or about August 30, 1905. The plaintiff in error, appearing by her legal guardian, alleged that the land involved was a part of the lands allotted to her as a Creek freedman; that at the time of the selection of the allotment, the plaintiff was found by the Dawes Commission to be an incompetent person and her allotment was selected for her as in cases of incompetent persons. She further alleges that the deed which purported to convey the fee simple title to said land from her to the International Land Company was executed without consideration, and was executed while she was of unsound mind, incompetent, insane, and incapable of conveying her land.

It is alleged that all of the subsequent purchasers took with notice of the condition of plaintiff's mind; that she was wholly incapable of transacting business at the time of the purported execution of the deed. The petition asks for the cancellation of the deed in favor of the International Land Company and the other instruments of record in favor of the several other defendants, for the possession of the premises, rents and profits from the 30th day of August, 1905, for an accounting of the oil removed from the land, and for the appointment of a receiver to operate the property under the order of the court, pending final disposition of the case.

The International Land Company, in whose favor the deed was executed, denied that the grantor was a person of unsound mind or incompetent to transact business at the time of the execution of the deed or at any other time; denied that the Commission to the Five Civilized Tribes had any power or authority to determine the competency or sanity of the plaintiff, or that such findings were of any judicial effect, or that such finding was constructive notice of the mental condition of the plaintiff.

The other defendants plead the competency of the plaintiff; that they were bona fide purchasers for value and without notice of any claim of the plaintiff, and further plead

estoppel and laches on the part of the plaintiff and those acting for her.

Upon the issues joined the question presented to the trial court for determination was whether the deed executed or purported to have been executed by Lucy Harris on August 30, 1905, was void, voidable, or valid. The court, after hearing the evidence, the greater part of which was submitted upon depositions, rendered judgment for the defendants.

The evidence discloses that on August 30, 1905, the deed in question was executed in Muskogee, Okla., and while the plaintiff was living with her daughter in that city; that at the time of the delivery of the deed the husband of the plaintiff's daughter was working for the International Land Company, or the president of such company, and plaintiff's daughter and her husband made arrangements for the sale of the land to the International Land Company through one Bradley, the president thereof, who agreed to pay $10 an acre for the land. The deed was prepared in the office of the company, and a notary public employed by the company carried the deed, thus prepared, to the home of the plaintiff's daughter, and there the deed was executed in the presence of plaintiff's daughter, plaintiff signing by mark. The notary public testified that the plaintiff, in answering his questions as to whether she knew the nature of the deed, spoke in monosyllables, answering only yes or no, but that she semed to understand that she was selling her land. When he returned to the office of the International Land Company he talked, however, to the president, Mr. Bradley, regarding the condition of the plaintiff at the time of the execution of the deed, saying that she was "sitting on a pile of quilts on the floor of the west room of the house"; "that he didn't like the looks of the old woman." The consideration for the deed was not paid to Dilsey Harris or Lucy Harris, the plaintiff, but the check issued in payment thereof was delivered to Dolly Vaughn, plaintiff's daughter, and some cash was received. None of the money was paid to the plaintiff directly.

The plaintiff introduced numerous witnesses in the trial of the cause who testified to having known Dilsey Harris for periods of time ranging from 25 to 30 years prior to the bringing of this action and from 15 to 20 years prior to the execution of the deed. The testimony of these witnesses presents no conflict on the material facts, but, to the contrary, substantially agree that Dilsey Harris in her girlhood showed average intelligence, attended school, learned to read and write, but that after the death of her husband and the birth of her last child she became insane, and, to a degree, violent; the witnesses explaining her condition with such expressions as she became "mindless", "crazy", etc. The evidence further discloses that after becoming deranged she was unable to read or write or transact any business of the simplest kind; that she did not select her allotment, always contending that she had no land; that she could not dress herself or make her clothes; that she was unclean in her habits and would, when served with food, grab it with her hands and thus eat it, or else, at times, throw it away. It is testified that she would upon occasions spit in her food, would often run into the weeds and hide and would have to be found and brought into the house; that she would sit for hours and talk to herself, cursing and abusing those who came near her. This condition existed long prior to the execution of the deed.

The only evidence introduced which showed in the slightest degree that she was ever able in any particular to care for herself, after the death of her husband, was the testimony that after she had lived with her sister for awhile her brother-in-law built a home for her about one-half a mile from his home, and that she lived there with her two children for a short time; but the testimony in this particular is very meager, and the evidence discloses that at this time she did not care for herself without assistance. The evidence further discloses that her condition had not changed materially since she first became insane, except that she became quieter and not so violent.

Shortly after the execution of this deed, the United States Court, sitting in and for the Western District of the Indian Territory, after a hearing before a jury, found her totally incompetent, and a guardian was apointed for her as an insane person. The record is silent as to what action by the guardian was taken, if any, to recover this property. The guardian, it appears, was later discharged.

The defendant, the International Land Company, on August 28, 1908, conveyed the land to George W. Adams, who executed an oil and gas lease in March, 1910, to one M. P. Stauffer, who, in turn, assigned his rights in the oil lease to F. A. Ross and H. M. Greis, of Tulsa, Okla., in August, 1911, who assigned the lease, in 1913, to the Creo Oil Company, which defendant assigned an undivided one-half interest to the Security Oil Company. Defendant Adams conveyed the land to H. B. Martin and B. T. Hainer, who, in turn, conveyed the legal title to the First

National Bank of Tulsa, to secure an indebtedness of $10,524, the First National Bank of Tulsa holding the legal title in trust for said Martin and Hainer, subject to the payment of such obligation.

In rendering judgment the trial court did not make finding of facts nor conclusions of law, but did make a statement, which was copied in the record, giving his reasons for his decision, in which he said, in substance, that there was no doubt in his mind but that the plaintiff at the time of the trial was mentally incompetent to contract or make conveyances of the land, and was, "in fact, crazy now", and that in 1906, shortly after the execution of the deed, she was "incapable of making a conveyance"; that there was evidence showing that prior to the execution of the deed she was of unsound mind, but the evidence failed to convince him that she was insane or entirely without understanding at the time the deed was executed.

Plaintiff now seeks to reverse the action of the court below, discussing three propositions: First, that Dilsey Harris was totally without understanding at the time of the execution of the deed, and was therefore incapable of conveying the land involved, and the deed is void and of no force and effect: second, if plaintiff was not totally without understanding, the deed is voidable, and the defendants were charged with constructive notice of her incompetency, and are not, therefore, entitled to protection as innocent purchasers; third, none of the defendants were innocent purchasers.

We are not unmindful of the rule that in equity actions this court will not reverse the judgment of the trial court unless such judgment is clearly against the weight of the evidence. Lehr v. Grennell Farm Loan Co., 65 Okla. 144, 165 Pac. 167; Parker v. Tomm et al., 78 Okla. 103, 188 Pac. 1074; Tobin v. Gantt et al., 78 Okla. 73, 189 Pac. 170; 78 Okla. 184, 189 Pac. 353.

The deed in question was executed prior to statehood and must be governed by the laws in force in the Indian Territory. Counsel agree that the common law was in force at the time and that our statutes (sections 888 and 889, Rev. Laws 1910) are merely declaratory of the common law with reference to the execution and validity of instruments by incompetent persons. Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220; Dunmyer v. Maas, 21 Okla. 434, 96 Pac. 591.

It is virtually conceded that if the plaintiff was entirely without understanding, the deed would be void and of no force and effect, but it is insisted that the evidence fails to show that the plaintiff was in such condition of mind, and shows that she was only of unsound mind and not entirely without understanding, and, therefore, her deed would only be voidable; that the facts show she was not overreached or defrauded in any way, and subsequent purchasers should be protected, and, further, the deed should not be canceled by reason of the long delay in bringing this action and of the large expenditures by defendants for the development of the land for oil and gas. We cannot agree with counsel that the evidence shows that plaintiff is not and was not, at the time of the execution of this deed entirely without understanding. The evidence clearly convinces us that this plaintiff did not have sufficient mental capacity to understand and know the nature of the transaction involved in the sale of this land. This court, in the recent case of Long et al. v. Anderson, Adm'r, et al., decided January 13, 1920, 77 Okla. 95, 186 Pac. 944, in discussing the provision of our statute (section 888, Rev. Laws 1910), which provides:

"A person entirely without understanding has no power to make a contract of any kind"
—said:

"Therefore, the applicable provision of the statutes to the facts of this case is section 888, which provides that a person entirely without understanding has no power to make a contract of any kind, and under which such person is only liable for the reasonable value of things furnished to him for his support or the support of his family. The words 'entirely without understanding' in this section, in our opinion, have reference to the nature of the contract assailed. In order to render a deed void under this section on the ground of insufficient mental capacity, it must be shown that the grantor not only did not understand the nature of the transaction, but also that he was without sufficient mental capacity to understand it. While this particular section was not mentioned, we think the rule announced in Miller v. Folsom, 49 Okla. 74, 149 Pac. 1183, announces that just and correct rule to be applied in determining the competency of a grantor to execute a deed. It was there held that the test to be applied in such circumstances is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting, and that in order to invalidate the deed it must be shown that the grantor was incapable of comprehending that the effect of the deed, when made, executed, and delivered, would be to divest him of the title to the land set forth in the deed.'

To the same effect is the case of Norris v. Dagley, 64 Okla. 171, 166 Pac. 718, in which Mr. Justice Hardy said:

"In discussing this statute, it was said that the term 'understanding' was used to denote, not the act of understanding, but the capacity or faculty of doing so, and that the expression 'without understanding' was to be understood as referring to persons without such capacity, and was not be understood in its literal and extreme sense, because in hardly any case could even the most insane person be said to be without some degree of understanding, but rather it was to be understood as restricted to the subject-matter to which the section relates, which is that of contracts executed and executory, and hence as applying to all persons who were entirely without the capacity of understanding or comprehending such transactions, and it was held that the facts were sufficient to bring the case within the provision of the statute."

After a careful consideration of this evidence, we are thoroughly convinced that the judgment of the trial court is clearly against the weight of the evidence, and the testimony conclusively shows that at the time of the execution of this deed, and long prior thereto and since Dilsey Harris was entirely without understanding, within the meaning of section 888, Rev. Laws 1910, supra.

By reason of the conclusions that we have reached as above indicated, we think it is unnecessary to consider the other assignments of error.

Under the rule repeatedly announced by this court in cases of equitable cognizance, when this court finds that the judgment of the trial court is clearly against the weight of the evidence, it is the duty of this court to reverse said judgment and to render, or cause to be rendered, such judgment as the trial court should have rendered. Tulsa v. Purdy, 73 Oklahoma, 174 Pac. 759; Pyeatt v. Estus, 72 Oklahoma, 179 Pac. 42.

It is therefore ordered that the judgment of the trial court be reversed, and this cause be remanded, with directions to the trial court to set aside the judgment heretofore rendered, and that the deed executed in favor of the International Land Company and subsequent conveyances be canceled as clouds upon the title of the plaintiff in error, and for such proceedings as may be necessary for a proper and just accounting.

All the Justices concur.