## WALKER et ux. v. CITIZENS NAT. BANK OF OKMULGEE.

No. 20771. Sept. 19, 1933.

Withdrawn, Corrected, and Refiled Sept. 21, 1933.

A. L. Emery, for plaintiffs in error.

Steele & Boatman, for defendant in error.

BAYLESS, J. The Citizens National Bank of Okmulgee, Okla., a corporation, instituted an action in the district court of Okmulgee county, Okla., on the 15th day of July, 1928, against C. H. Walker and Fanny E. Walker, husband and wife. The plaintiff below will be referred to here-

inafter as bank and the defendants below as husband and wife, respectively.

The petition filed by the bank set up a note and chattel mortgage executed by the husband and wife and delivered to it, alleged that the note was past due and unpaid, and sought judgment for the amount due upon the note and the foreclosure of the chattel mortgage in satisfaction of the judgment. The husband filed a separate answer in which he set out briefly the history of the note sued upon and its renewal in its present form, and his reasons for the execution and delivery of the chattel mortgage, and specifically alleged that the wife did not know what she was doing at the time she executed and delivered the the chattel mortgage. The wife filed her separate answer, in which she claimed that the property covered by the chattel mortgage was her separate individual property, and further alleged that before, at, and after the time of the execution of the note and mortgage in question, she was suffering from a disease known to medical science as "psycho-neurosis," and that she was entirely without any understanding on March 27, 1926, when she signed the mortgage, and that she knew nothing of having signed said mortgage until told so by her husband about January, 1928, when the bank first attempted to foreclose the mortgage. To these separate answers the bank filed separate replies in the nature of general and specific denials of the incapacity of the wife.

At the trial of this case a jury was impaneled, and the bank introduced evidence sufficient to sustain the allegations of its petition. The evidence on behalf of the husband and wife was introduced jointly. It showed that prior to the middle of the year 1925, the wife was a woman enjoying the usual health and was an excellent business woman; that sometime during the year 1925 she began to suffer physically; that she was finally forced to give up her employment; that she underwent an operation in December, 1925, and as a result of this operation, the resulting pain, the use of an opiate, and later bromidia, she developed into a person of high nervous temperament; that she suffered intense pain and agony, and her nervous and mental equilibrium were upset; and that at the time of the execution and delivery of the note and mortgage in question, she did not know that she was executing and delivering a note and mortgage and did not understand or comprehend the effect of

her act. The evidence upon behalf of the husband and wife is also clear that sometime before January, 1928, the wife had recovered to the extent that she could negotiate a loan from her father; that she knew and understood in January, 1928, when the bank filed its first suit to foreclose this mortgage, that something had occurred which she did not understand, and that her husband fully explained to her at that time that she had executed and delivered this note, and how he had procured a withdrawal of the suit then filed; that in July, 1928, when this action was filed, she went to the bank and to its attorney and discussed the filing of the suit and negotiated for extension of time for the payment of the note and for the dismissal of the mortgage; and thereafter she mortgaged this property to her father as security for money received from him; and that she defended this action and that she appeared and testified as a witness in her own behalf.

At the close of the defendant's evidence the bank interposed a demurrer, which the court sustained, and this appeal resulted.

The husband and wife contend upon appeal that their defense is based upon sec. 4981, C. O. S. 1921 (sec. 9402, O. S. 1931), which reads as follows:

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

The evidence introduced on behalf of the husband and wife does not set up any defense to the note and mortgage on behalf of the husband, and he cannot complain of the action of the court in sustaining the demurrer as to him.

The husband and wife cite a number of cases to the effect that a contract made by a person entirely without understanding is absolutely void, among such cases being Wilson v. Ferguson, 84 Okla. 79, 202 P. 500; Norris v. Dagley, 64 Okla. 171, 166 P. 718; Harris v. International Land Co., 89 Okla. 163, 213 P. 845; Cochran v. Monarch Loan Co., 95 Okla. 111, 218 P. 313; McKone v. McConkey, 77 Okla. 3, 185 P. 520, and Long v. Anderson, 77 Okla. 95, 186 P. 944.

Section 4981, C. O. S. 1921, supra, and section 4982, C. O. S. 1921, (sec. 9403, O. S. 1931), providing as follows:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his in-

capacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the article on extinction of contracts"

—are apparently the only distinctions laid down by our statute relating to the mental capacity of a person who is contracting. The first section applies to persons "entirely without understanding," and the second section applies only to persons of "unsound mind." There are so many various types and degrees of mental disorder that it is probably impracticable to make a further or better distinction by statute.

The effect of the argument advanced on behalf of the husband and wife is that a contract made by a person during a temporary and passing attack of insanity of such a severe nature as to render such person "entirely without understanding" is void. That this alone is a complete defense under all circumstances.

Under the evidence presented in this case and based upon the authorities presented by the husband and wife, we are unwilling to say that the mental incapacity suffered by the wife was sufficient to bring her within the class of persons contemplated as being "entirely without understanding," as provided by section 4981, C. O. S. 1921, supra.

The medical authorities and legal authorities all treat this subject under the head of insanity and discuss thereunder the varying types, characteristics, and degrees thereof. They recognize that a person may suffer chronic mental incapacity, rendering him "entirely without understanding." They recognize that a person may so suffer at certain times as to be "entirely without understanding" of the actual performance or the legal force and effect of a certain act. This incapacity may be brought about by disease or drunkenness or the use of drugs. These authorities also recognize that there may be lucid intervals or even a recovery from such incapacity, and the legal authorities recognize the duty or privilege to disaffirm or ratify such acts when a lucid interval occurs and the occasion arises, or recovery is brought about. See 32 C. J. 783, sec. 520. The cases cited and relied upon by the husband and wife in every instance present cases of chronic or life-long inability to know or understand the force and effect of acts done. None of those cases present an instance comparable to that of the wife in this case, where there has been a life-long ability to transact and understand business broken only by an interim of mental incapacity, rendering the wife "entirely without understanding," covering a period of time of about two years. We hold that the evidence presented by the wife does not bring her within the rule announced by the cases cited by her, and that she was not a person "entirely without understanding" within the meaning of section 4981, C. O. S. 1921, supra.

When a lucid interval occurred, or she so far recovered from the effects of her disease, opiates, or drugs as to negotiate a loan from her father, to know when told of the existence of the mortgage that something was wrong, to understand the legal effect of what she had done when her husband explained it to her, to negotiate for the continuance of the present suit or an extension of time within which to pay the note and discharge the mortgage, to remortgage the property to her father, to defend this suit in her own name, and to testify in her own behalf, she then to all purposes and interests occupied the position either of a person of unsound mind or a person sui juris, and she must act accordingly and defend this suit accordingly. See 32 C. J. 738.

Therefore, we hold that the evidence introduced on behalf of the wife may have been sufficient to go to the jury on the question of whether she was a person "entirely without understanding" as of March 27, 1926, nevertheless, it was not sufficient to constitute a defense to the cause of action pleaded by the bank, and that the trial court did not err in sustaining the demurrer as to both the husband and wife.

The husband and wife filed a joint motion for new trial and a joint petition in error, making joint assignments of error. We have heretofore stated that the evidence introduced by the husband and wife presented no defense whatever on behalf of the husband, and another reason why this judgment of the trial court should be sustained is the rule of this court, as laid down in Kingkade v. Plummer, 111 Okla. 197, 239 P. 628, and other cases, to wit:

"A joint assignment of error must be good as to all who join in it or it will be good as to none."

Therefore, the judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, OSBORN, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS and WELCH, JJ., absent.