## MICCO et al. v. REPLOGLE et al.

No. 24177.    June 4, 1935.

Rehearing Denied January 14, 1936.

Application for Leave to File Second Petition for Rehearing Denied February 4, 1936.

W. L. Ransom, J. T. Smith, and L. O. Lytle, for plaintiffs in error.

A. M. Beets, for defendants in error.

BAYLESS, J. The plaintiffs in error, Amanda Micco, Mary Deere, Lasley Buckner, sometimes known as Lassley Bull, and Solomon Buckley, who were plaintiffs below, appeal to this court from a judgment of the district court of Creek county, Okla., in favor of defendants in error, D. Replogle and H. L. Graves, who were defendants below. Except where it is necessary to refer to the individual parties by name, they will be referred to in this opinion in groups as they appeared in the trial court.

The cause of action involves the title to three allotments of 160 acres each. The allottees were Charley Keys and Semarhetchkar Keys, husband and wife, and Lesta Keys, their child. The father and child died, and the mother inherited their allotments. The mother then died, survived only by her father, Joe Deere; her mother being dead. Joe Deere claimed to have inherited all three of these allotments as the sole and only heir of Semarhetchkar Keys. In the year of 1909, Joe Deere and his wife, Yarner Deere (who later married one Chupco and is often referred to in the record as Yarner Chupco), executed a deed to this 480 acres of land to D. Replogle for a recited consideration of $960. This deed was presented to the county judge of Okfuskee county, Okla., and approved by him. Joe Deere died in 1914 or 1915, and left surviving him, Yarner, his widow, Amanda Micco, a daughter, and Mary Deere and Lassley Buckner, granddaughters, who claim to have inherited the land involved herein. Yarner Chupco died in 1924, and her claimed inheritance in this land is claimed by Mary Deere and Solomon Buckley, as her heirs. In 1915, after the death of Joe Deere, V. M. Miracle took a deed from Amanda Micco, duly approved by the county judge having jurisdiction, to this land and thereafter conveyed to defendants. In the year of 1916, Yarner Chupco and Amanda Micco filed suits in the federal court to set aside the deeds given by them. In 1917, Replogle settled with these women for about $500 each. These settlement agreements were approved by the county judge having jurisdiction, and the suits in the federal court were dismissed. In the meantime, maternal relatives of certain of the deceased allottees commenced an action in the district court of Creek county, Okla., to establish their title to the real estate involved. After the dismissal of the suits in the federal court, Yarner Chupco and Amanda Micco intervened in that action. That action seems to have had many adverse claimants, and was tried at great length. The judgment was not satisfactory to many of the parties and two appeals and cross-appeals were taken.

While these appeals were pending in this court, settlements of contentions between many of the parties were made, and all parties to the appeals except those involved herein were dismissed or abandoned. Plaintiffs herein, who were cross-petitioners therein, filed briefs, but defendants failed to file briefs, and the appeal of plaintiffs was sustained and the cause remanded for a new trial. Ahfonoke v. Bullett, 114 Okla. 243, 246 P. 385.

Because of the voluminous record in that action, the parties hereto stipulated to a dismissal of that action without prejudice, and agreed that plaintiffs might file a new action. This suit followed that stipulation.

The pleadings of the plaintiffs attacked the deed given by Joe Deere, as well as all deeds and settlements made thereafter with those claiming to be his heirs. The attack upon the deed given by Joe Deere is upon four grounds: (1) Incompetency to contract because of habitual drunkenness; (2) the consideration for said deed was grossly inadequate; (3) Replogle occupied a fiduciary relation to Joe Deere at the time he took the deed, which relation he violated; and (4) fraudulent representations were made to the county judge to procure his approval of the deed executed by Joe Deere.

Plaintiffs' argument upon propositions 1 and 3 follow substantially the above outline, and we will follow it in our discussion of this appeal. All of these involve the weight of the evidence. The trial court held against plaintiffs, and we are asked, because of the form of the evidence, to weigh it independently and to find that the trial court's act sustaining defendants' demurrer to plaintiffs' evidence was erroneous.

First: Incompetency due to drunkenness. The witnesses who testified for plaintiffs had known Joe Deere for a great many years. They gave some proof of drunkenness over a period of years. Their testimony generally

consisted of such statements as these: "I don't think he would do any business to advantage"; and, "if a fellow follows that business (drinking) he is always in trouble." Again, they would say in one place that drinking made his mind weaker and that he did not understand what he was doing, and say in another that he was of an average intelligence for a full-blood Creek. This evidence, as well as all other evidence touching upon his competency, was of such a general nature and in most instances so remotely related to the time of the execution of the deed as to be of little weight. No witness testified that Joe Deere was intoxicated at the time he executed the deed, or that his habit of being influenced by intoxicants had so weakened his understanding as to deprive him of a proper notion of the effect of the particular act. We said in Harris v. International Land Co., 89 Okla. 163, 213 P. 845:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which such grantor is engaged, and the business which is being transacted; and, when it is made to appear that the grantor was incapable of comprehending that the effect of a deed, when made, executed and delivered, would be to divest such grantor of title to the land described in such deed, such a deed is void."

See, also, 32 C. J. 728; and 19 C. J. 813, et seq.; and 8 R. C. L. 944-948. Having in mind the testimony and statements of the rule of law applicable, we are unwilling to disturb the findings of the trial court.

Second: Was the consideration for the deed grossly inadequate? The plaintiffs argue this point on two grounds: (1) That the consideration recited in the deed was so grossly inadequate as to shock the conscience of the court; and (2) that only a portion of the recited consideration was actually paid to Joe Deere. Plaintiffs proved that this land was appraised by an agent of the United States government at about $2,500. They proved by other witnesses that it had a market value in excess of this figure. For the purposes of considering this point we would be safe in saying that plaintiffs established values ranging from $5 to $12 per acre. The agreed selling price, approved by the county judge, was $2 per acre, or $960. The problem with which the seller, Joe Deere, and the county judge to approve the deed, were faced was best expressed by the agent who appraised the land at the request of the county judge. He advised the county judge that he placed a value of $2,-575 upon this land, but that it was entirely probable that the land could be sold to many farmers, who had no money to pay therefor, at a price in excess of his appraisal, while, on the other hand, the land buyers who did have money to pay for this property would in all probability not pay as much as the appraised price. Taking into consideration the testimony and the fact that the county judge approved the deed, and that two district judges who have since tried the case have found against the plaintiffs upon this issue, we are unwilling to disturb the findings of the trial court on this point. But the plaintiffs insist that only a small portion of this consideration was actually paid to Joe Deere. One witness testified that Joe Deere received several advances against the sale price of the land before the sale was actually completed, and plaintiffs insist that these advances total only $150. The evidence upon this point was extremely vague and this figure may be as nearly right as any other. The wife of Joe Deere testified that he was given $150 when the deed was signed. Plaintiffs argue that this money and the advances testified to by the other witness are the same. We cannot agree to this, for in our opinion plaintiffs have established that Joe Deere received as much as $300. Plaintiffs' argument is that they have shown that Joe Deere received a certain sum of money, and that, since no one else has shown that he received more than that, their point is established. The bare statement of this contention is its own refutation. Plaintiffs voluntarily assumed the burden of establishing that only a small part of the $960 was paid, and that no more than that was paid. They have failed in establishing this fact. They argue that the $240 to be deducted from the $960, on account of an agricultural lease, was improper if not fraudulent because of a lack of consideration for the agricultural lease. This fact was not established with any degree of certainty.

Third: Fiduciary relation. We think the effort of plaintiffs to show that Replogle occupied a fiduciary relation to Joe Deere has wholly failed. This court has said in defining a fiduciary relation:

"Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. * * * The expression 'fiduciary relation' is one of broad meaning, including both technical fiduciary relations and those

informal relations which exist whenever one man trusts and relies upon another. (Citing authorities.)" Reeves v. Crum, 97 Okla. 293, 225 P. 177.

Plaintiffs alleged and tried to prove that Replogle was attorney for Joe Deere. The evidence shows that Joe Deere went to Replogle time and again in an effort to effect a sale of this land, and not to seek legal advice or assistance. It is charged that Replogle told Deere that he could not purchase this land himself, but would hunt a buyer for him. It is then shown that Replogle bought the land in his own name, with considerable formality as required by the federal statutes, for $960, and shortly thereafter sold to Graves, his codefendant herein, a portion of the land for $2,200. It is not shown that Graves was willing to buy this land from Joe Deere at that figure, or that Replogle in buying this land from Joe Deere was acting as Graves' agent and profited thereby in the violation of the duty that he owed Joe Deere. The plaintiffs' position in this respect is largely argumentative and lacks the support of evidence of a degree of certainty that would compel belief. We do not believe the plaintiffs' evidence established a fiduciary relation, or that it established the abuse of a fiduciary relation, conceding that one existed.

Four: Fraudulent representation to the county court to procure the approval of Joe Deere's deed. The plaintiffs produced the county judge who approved this deed, but this man had no independent recollection of the transaction. The bulk of the plaintiffs' argument in its brief is based upon circumstances disclosed by the face of the record which they argue are susceptible of a construction in support of their contention. It is sufficient answer to this to say that such circumstances are as easily, if not more so, susceptible of a contrary construction.

We have given the record in this case much consideration. It consists of a great many exhibits of instruments executed in the past. Most of the evidence introduced on behalf of the plaintiffs consisted of excerpts taken from the record in the trial of the former case and treated as depositions herein. It is not entirely clear from the record in this case exactly to what extent the estate or interest of Joe Deere was reduced in favor of the plaintiffs in the former case, nor exactly what were the issues left to be tried between the parties to this action. The pleadings of the plaintiffs are sufficient to state a cause of action, but upon a consideration of the whole of plaintiffs' evidence, we are of the opinion that plaintiffs have fallen far short of introducing evidence to sustain the allegations of their pleading.

Having reached the conclusion concerning Joe Deere's deed, which we have just expressed, it becomes unnecessary to consider the later deeds and settlements taken from his heirs whose interest in the land involved herein would only arise in the event the deed from Joe Deere to defendants was canceled.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and CORN, JJ., concur.